1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   AARON JONES,

11          Plaintiff,                    No. CIV S-03-0119 DFL DAD P

12      vs.

13   LOU BLANAS, et al.,

14          Defendants.            FINDINGS & RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is defendants' Mabeus, Green and Kacalek's motion for

18   summary judgment.[1]

19                      PROCEDURAL HISTORY

20          Plaintiff was confined at the Sacramento County Jail when he filed his original

21   complaint.  Plaintiff alleged that while he was confined at the jail, he received inadequate

22   medical care with respect to both his left elbow and ankle condition.  On August 22, 2003, the

23   court granted plaintiff's request to proceed in forma pauperis but dismissed the complaint with

24

25          [1] Defendants Mabeus, Green and Kacalek are the only defendants proceeding in this
     action.  In his second amended complaint, filed on April 16, 2004, plaintiff did not name former
26   Sacramento County Sheriff Lou Blanas as a defendant.

                             1

1  leave to file an amended complaint.  Plaintiff was advised that he must provide allegations

2  concerning each named defendant.  Plaintiff was also advised regarding the legal standards

3  governing a claim of inadequate medical care.

4          On October 20, 2003, plaintiff filed an amended complaint but on October 28,

5  2003, notified the court that he had inadvertently identified the wrong individuals as defendants.

6  On March 29, 2004, the court dismissed the amended complaint and directed plaintiff to file a

7  second amended complaint naming the proper defendants.

8          On April 16, 2004, plaintiff filed his second amended complaint naming

9  defendants Dr. Mabeus, Deputy Green and Deputy Kacalek as defendants.  On June 23, 2004, the

10  undersigned authorized service of process on those three defendants.  Service for defendants

11  Green and Kacalek were returned unexecuted.  Meanwhile, defendant Mabeus filed his answer

12  on October 5, 2004.  The court again ordered the U.S. Marshal to attempt service on defendants

13  Green and Kacalek on December 2, 2004.  Waiver of service was returned on February 16, 2005

14  for defendant Kacalek and March 4, 2005 for defendant Green.

15          On February 11, 2005, defendants filed a motion to dismiss the action pursuant to

16  Fed. R. Civ. P 12(b) for failure to exhaust administrative remedies.  On August 4, 2005, the

17  undersigned filed findings and recommendations recommending that the motion to dismiss be

18  denied.  The findings and recommendations were adopted in full on September 16, 2005.

19  Subsequently, on October 14, 2005, defendants Green and Kacalek filed their answer.

20          The court's discovery order was filed on October 12, 2004 and a scheduling order

21  was filed on October 27, 2005.  The deadline for completion of all discovery was February 24,

22  2006.  Prior to that deadline, the parties filed several discovery motions.  On January 5, 2006, the

23  court ordered plaintiff to provide supplemental responses to defendant Mabeus' special

24  interrogatories and to produce certain documents.  On June 15, 2006, the court denied

25  defendants' motion to compel responses to special interrogatories and for sanctions, denied

26  defendant's renewed motion for sanctions, and denied as untimely plaintiff's motion for

1  discovery.  In that same order plaintiff was provided an extension of time to file his opposition to

2  defendants' motion for summary judgment.

3  　　　　　On July 25, 2006, the court vacated the dates for the filing of the parties' pretrial

4  statements, as well as the pretrial conference and trial dates pending disposition of defendants'

5  summary judgment motion.

6  　　　　　　　　　　　　SECOND AMENDED COMPLAINT

7  　　　　　Plaintiff alleges that defendant Dr. Mabeus was deliberately indifferent to

8  plaintiff's medical care concerning his ankle condition.  In this regard, plaintiff contends that his

9  ankles are swollen, he is in extreme pain and he can only walk short distances as a result.

10  Plaintiff alleges that defendant Mabeus has failed to provide him with any medical treatment for

11  this condition and has not referred plaintiff to an orthopedic doctor for appropriate treatment.

12  　　　　　Plaintiff claims that defendants Green and Kacalek, deputies at the jail, were also

13  deliberately indifferent to plaintiff's medical care.  In this vein, he alleges that on January 3,

14  2003, defendants Green and Kacalek ignored plaintiff's request to see the nurse and told plaintiff

15  that if he pushed the cell's call-button again to request the nurse, they would issue a disciplinary

16  infraction charge against him.

17  　　　　STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

18  　　　　　Summary judgment is appropriate when it is demonstrated that there exists "no

19  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

20  matter of law."  Fed. R. Civ. P. 56(c).  The moving party

21  　　　　　　always bears the initial responsibility of informing the district court
　　　　　　of the basis for its motion, and identifying those portions of "the
22  　　　　　　pleadings, depositions, answers to interrogatories, and admissions
　　　　　　on file, together with the affidavits, if any," which it believes
23  　　　　　　demonstrate the absence of a genuine issue of material fact.

24  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

25  　　　　　"[W]here the nonmoving party will bear the burden of proof at trial on a

26  dispositive issue, a summary judgment motion may properly be made in reliance solely on the

1  'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Summary

2  judgment should be entered, after adequate time for discovery and upon motion, against a party

3  who fails to make a showing sufficient to establish the existence of an element essential to that

4  party's case and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A]

5  complete failure of proof concerning an essential element of the nonmoving party's case

6  necessarily renders all other facts immaterial."  Id.  Summary judgment should be granted "so

7  long as whatever is before the district court demonstrates that the standard for entry of summary

8  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

9         If the moving party meets its initial responsibility, the burden shifts to the

10  opposing party to establish that a genuine issue as to any material fact does exist.  See Matsushita

11  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

12  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

13  of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or

14  admissible discovery material in support of the contention that a dispute exists.  See Fed. R. Civ.

15  P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The party opposing summary judgment must show

16  that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under

17  the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

18  could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

19  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

20  (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

21         In trying to establish the existence of a factual dispute, the party opposing

22  summary judgment need not establish a material issue of fact conclusively in his or her favor.  It

23  is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

24  parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the

25  "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

26  /////

1   whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

2   56(e) advisory committee's note on 1963 amendments).

3            The evidence of the party opposing summary judgment is to be believed, and all

4   reasonable inferences that may be drawn from the facts placed before the court must be drawn in

5   favor of the party opposing summary judgment.  See Anderson, 477 U.S. at 255; Matsushita, 475

6   U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's

7   obligation to produce a factual predicate from which an inference may be drawn.  See Richards v.

8   Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

9   (9th Cir. 1987).  The opposing party "must do more than simply show that there is some

10  metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not

11  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

12  Matsushita, 475 U.S. at 587 (citation omitted).

13           On June 23, 2004, the court advised plaintiff of the requirements for opposing a

14  motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

15  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

16  Cir. 1988).

17                            THE PARTIES' ARGUMENTS

18  I.  Defendants' Motion

19           Defendants argue that judgment in their favor should be granted because their

20  alleged malfeasance does not rise to the level of a constitutional violation.  In so arguing,

21  defendants' rely on excerpts from plaintiff's deposition, a declaration from defendant Mabeus,

22  plaintiff's medical records, and the second amended complaint.

23           Defendants contend that the following material facts are undisputed:  On

24  December 17, 2002 during outdoor recreation, plaintiff fell down a set of stairs while retrieving a

25  basketball and twisted his left ankle.  (Mot. for Summ. J. (MSJ) at 3.)  At the time of his injury,

26  plaintiff weighed 288 pounds.  (Id.)  Plaintiff was seen by defendant Dr. Mabeus about twenty

1   minutes after he arrived at the medical clinic and, after a physical examination, defendant

2   Mabeus determined that plaintiff had suffered a left ankle sprain.  (Id. at 3-4.)  Defendant

3   Mabeus ordered that plaintiff be given an analgesic (800 mg. of Motrin) for thirty days for pain

4   relief and to reduce swelling, crutches, a lay in slip for a lower bunk, a lower tier assignment and

5   an x-ray of the left ankle.  (Id. at 4.)  The x-ray was negative for a fracture or dislocation and

6   defendant Mabeus instructed plaintiff to keep weight off his ankle and to keep his leg elevated

7   for the next several days.  (Id.)  Plaintiff requested an ice pack but defendant Mabeus refused,

8   explaining that the swelling would go down by itself because it was not an acute injury.  (Id.)

9   Defendant Mabeus did prescribe an analgesic for plaintiff.  (Id.)

10             As to defendants deputies Green and Kacalek, the incident at issue occurred on

11  January 3, 2003 at approximately 2:00 p.m. when plaintiff was released from his cell by

12  defendant Green for a sick call appointment that plaintiff had made due to his ankle pain.  (Id. at

13  5.)  After waiting in the day room for one hour and forty-five minutes, plaintiff was returned to

14  his cell by defendant Kacalek.  (Id.)  After returning to his cell, plaintiff pushed the emergency

15  call button and told the deputies that he was in pain due to his twisted ankle and that he needed to

16  see a doctor.  (Id.)  Plaintiff was told that the nurse or doctor would see him that afternoon but

17  that the nurse was currently busy.  (Id.)  Plaintiff used the emergency button again and stated that

18  he needed to see the doctor.  (Id.)  Plaintiff was told not to push the button again unless there was

19  an emergency.  (Id.)  Plaintiff pressed the emergency button again and explained that he had a

20  medical emergency because he could hardly walk due to the ankle pain.  (Id.)  Plaintiff was told

21  that the doctor would see him later.  (Id.)  Plaintiff cannot recall when he was subsequently seen

22  by medical staff.  (Id. at 6.)  However, on January 6, 2003, plaintiff was seen by defendant

23  Mabeus who noted that although plaintiff's left ankle was still swollen, the swelling was less

24  than it was on December 17, 2002.  (Id.)  It was also noted that plaintiff came to the appointment

25  without the use of crutches and that this exacerbated both the pain and swelling in light of

26  plaintiff's obesity.  (Id.)  On January 22, 2003, plaintiff was again seen for his ankle pain and

1    swelling.  (Id.)  During the visit plaintiff admitted that he exercised daily which was in direct

2    contradiction to defendant Mabeus' advice.  (Id.)

3            Defendants contend that plaintiff cannot establish that defendant Mabeus' actions

4    constitute deliberate indifference under the Fourteenth Amendment.  (Id. at 9-10.)  Citing Estelle

5    v. Gamble, 429 U.S. 97, 107 (1976), defendants argue that defendant Mabeus's refusal to order

6    an ice pack demonstrates merely a difference of opinion as to the proper course of medical

7    treatment which does not constitute cruel and unusual punishment.  (Id. at 10.)  Furthermore,

8    defendants argue that plaintiff admitted at his deposition that he has no medical evidence to

9    suggest that defendant Mabeus' refusal to provide him an ice pack resulted in his ankle pain.  (Id.

10   at 11.)

11           Defendants argue that defendants Green and Kacalek are also entitled to summary

12   judgment concerning the January 3, 2003 incident because plaintiff has not demonstrated that he

13   had a serious medical need, and there is no causal connection between the defendants conduct

14   and plaintiff's actual injury.  (Id. at 12.)  Defendants argue that since plaintiff's complaints about

15   his ankle were the same on January 3and January 6, 2003, and there was no change in treatment

16   previously prescribed, plaintiff did not face a substantial risk of serious harm when he was

17   allegedly denied treatment on January 3.  (Id. at 13.)  Defendants also contend that there is no

18   causal link since plaintiff admitted at his deposition that the defendants' refusal to have plaintiff

19   seen immediately by medical staff did not exacerbate his ankle injury.  (Id.)  Finally, defendants

20   argue that plaintiff's own actions, including his failure to keep weight off the ankle, not using

21   crutches and exercising, were the likely cause of his ongoing ankle pain.  (Id.)

22   II.  Plaintiff's Opposition

23           Plaintiff contends that defendants did not submit the complete transcript of his

24   deposition to the court and because seventy-seven pages of that deposition testimony were

25   omitted, summary judgment should not be granted.  (Opp'n at 2, 5.)  Plaintiff also argues that

26   defendants have not presented any evidence supporting their motion for summary judgment.

1  (Id.)  Plaintiff disputes defendants' assertion that plaintiff did not tell defendant Mabeus when his

2  injury occurred.  (Id. at 4.)  He argues that "[a]ny doctor knows that any individual who sprained

3  their ankle needs ice to take the swelling down off the ankle . . . ."  (Id.)  Plaintiff questions

4  whether the medical records and deposition testimony support the assertions made in the

5  declaration submitted by defendant Mabeus in support of the motion for summary judgment.

6  (Id.)  For instance, although defendant Mabeus states that plaintiff came to an appointment

7  without his crutches, plaintiff contends that in his deposition he testified that correctional officers

8  confiscated his crutches and that he was forced to walk on his sore ankle.  (Id. at 5.)  Plaintiff

9  contends that he has a witness who saw plaintiff's crutches being taken away; however, because

10  he has missed the discovery deadline, he cannot use this evidence.  (Id. at 6.)  Finally, plaintiff

11  states that he will not disclose the location of his evidence because he fears it will be misused by

12  defendants.  (Id.)

13                                            ANALYSIS

14          Plaintiff's contention that defendants' motion for summary judgment should be

15  denied because the entire transcript of his own deposition was not submitted with the motion, is

16  without merit.  See Local Rule 5-133(j) ("Pertinent portions of the deposition intended to become

17  part of the official record shall be submitted as exhibits in support of a motion or otherwise.")

18  Defendants properly attached excerpts from the deposition transcript as an exhibit in support of

19  their motion.  Furthermore, on April 21, 2006, defendants lodged the original copy of the

20  deposition transcript in its entirety.

21  I.  Legal Standards for Fourteenth Amendment Medical Care Claim

22          Because plaintiff was a pretrial detainee at the time of the alleged constitutional

23  violation, his right to receive adequate medical care derives from the Fourteenth Amendment's

24  due process clause rather than the Eighth Amendment's protection against cruel and unusual

25  punishment.  Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing

26  Bell v. Wolfish, 441 U.S. 520 (1979), Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998), and

1    Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)).  However, "the due process clause imposes,

2    at a minimum, the same duty the Eighth Amendment imposes:  persons in custody ha[ve] the

3    established right to not have officials remain deliberately indifferent to their serious medical

4    needs."  Gibson, 290 F.3d at 1187 (9th Cir. 2002) (internal quotation marks omitted).  Thus, the

5    legal standards applicable to an Eighth Amendment claim regarding allegedly inadequate medical

6    care apply in this case.

7            In order to prevail on a § 1983 claim for violation of the Eighth Amendment

8    based on inadequate medical care, plaintiff must prove "acts or omissions sufficiently harmful to

9    evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106

10   (1976).  A claim of constitutionally inadequate medical care has two elements:  "the seriousness

11   of the prisoner's medical need and the nature of the defendant's response to that need."

12   McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

13           A medical need is serious "if the failure to treat the prisoner's condition could

14   result in further significant injury of the 'unnecessary and wanton infliction of pain.'"  974 F.2d

15   at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include "the

16   presence of a medical condition that significantly affects an individual's daily activities."  Id. at

17   1059-60.  In demonstrating the existence of a serious medical need, a prisoner satisfies the

18   objective requirement for proving an Eighth Amendment violation.  See Farmer v. Brennan, 511

19   U.S. 825, 834 (1994).

20           Next, plaintiff must demonstrate that defendants responded to the serious medical

21   need with deliberate indifference.  Proof that a defendant acted with deliberate indifference is

22   required to satisfy the subjective prong of the two-part test that is applicable to any Eighth

23   Amendment claim.  Farmer, 511 U.S. at 834.

24           Before it can be said that a prisoner's civil rights have been abridged with regard

25   to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,'

26   'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter

1  Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  Deliberate

2  indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

3  ordinary lack of due care for the prisoner's interests or safety."  Farmer, 511 U.S. at 835 (quoting

4  Whitley v. Albers, 475 U.S. 312, 319 (1986)).  A physician need not fail to treat an inmate

5  altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial,

6  884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition,

7  even if some treatment is prescribed, may constitute deliberate indifference in a particular case.

8  Id.  However,  mere differences of opinion between a prisoner and prison medical staff as to

9  proper medical care do not give rise to a § 1983 claim.  See Sanchez v. Vild, 891 F.2d 240, 242

10  (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir. 1981).

11        Additionally, mere delay in medical treatment without more is insufficient to state

12  a claim of deliberate medical indifference.  See Shapley v. Nevada Bd. of State Prison Com'rs,

13  766 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful,

14  there is no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060

15  (citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990) and Hudson v. McMillian,

16  503 U.S. 1, 5-9 (1992)).  A finding that an inmate was seriously harmed by the defendant's

17  action or inaction tends to provide additional support for a claim of deliberate indifference;

18  however, it does not end the inquiry.  McGuckin, 974 F.2d at 1060.  In summary, "the more

19  serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in

20  light of those needs, the more likely it is that a plaintiff has established "deliberate indifference

21  on the part of the defendant."  Id. at 1061.

22  II.  Defendant Mabeus

23        At his deposition, plaintiff confirmed that his claim against defendant Mabeus

24  concerns the doctor's refusal to give plaintiff an ice pack.

25        Q [defendants' attorney].  And so I am quoting up here, the reason
      you are suing him is because he didn't give you that ice pack,

26        right?

1    A [plaintiff].  I mean it's - - if you're asking - - if you're in pain
     and you are telling this doctor, look, I need ice for this to take the
2    swelling down for this.  And he is telling you no, and he keeps
     telling you no.  How would you feel?
3
     Q.  I just want to make sure I have it correct up here, because in the
4    law we have to be certain about what your allegations are, okay.
     And I think I understand everything you have told me about how
5    Dr. Mabeus treated you.
        It seems like the heart of it, your beef with him, so to speak, is because
6    he is telling you you don't need the ice pack.  And you are telling him I
     need the ice pack.
7
     A.  Correct.
8

9    (Dep. at 51-52.)

10           In his opposition to the pending motion for summary judgment, plaintiff argues

11   that it is common knowledge that ice should be applied to a sprained ankle to reduce the

12   swelling.  (Opp'n at 5.)  Defendant Mabeus has stated in his affidavit that based on his

13   examination and observations, it was his "professional medical opinion that Plaintiff had suffered

14   a left ankle sprain."  (MSJ, Ex. B, Decl. of Duane Mabeus, ¶ 3 at 2.)  Defendant Mabeas ordered

15   an anti-inflammatory to reduce the swelling, crutches, a lay in slip for a lower bunk and a lower

16   tier assignment, an x-ray, and advised plaintiff to keep the weight off his ankle for the next

17   several weeks.  (Id. ¶ 4 at 2.)  As for the ice pack, "I declined Plaintiff's request for an ice pack

18   because in my professional opinion, I knew Plaintiff's injury was not acute and knew that the

19   swelling would diminish on its own in light of the analgesic prescription."  (Id. ¶ 6 at 2.)

20           The court finds that this disagreement over whether treatment of plaintiff's

21   sprained ankle should have included icing to ease the swelling reflects a mere difference of

22   opinions about the proper course of treatment which does not rise to the level of a cognizable

23   /////

24   /////

25   /////

26   /////

11

1   constitutional claim.  See Sanchez v. Vild, 891 F.2d at 242 (differences of medical opinion are

2   insufficient to establish deliberate indifference).[2]

3              Therefore, since plaintiff has failed to establish an essential element for his

4   Fourteenth Amendment claim, the court will recommend that summary judgment be granted for

5   defendant Mabeus.

6   III.  Defendants Green and Kacalek

7              Plaintiff alleged in his second amended complaint that his requests for medical

8   care on January 3, 2003 were ignored and/or delayed by defendants Green and Kacalek.  Plaintiff

9   clarified his allegations in this regard at his deposition, testifying as follows:

10             Q [defendants' counsel].  . . . . Your contention against them is
              you were in pain on that date and they should have immediately
11            had you seen by a physician on that date, correct?

12             A [plaintiff].  Correct.

13             Q.  Because you had scheduled to see a nurse and you hadn't seen
              the nurse, for whatever reason.
14
              A.  Correct.
15
              Q.  But you're not denying (sic) that they prohibited that nurse
16            from seeing you though, correct?

17             A.  Correct.

18   (Dep. at 91.)  Plaintiff also testified that he believed his ankle pain should have been treated as an

19   emergency condition.

20             A [plaintiff].  When I pushed the [emergency] button [in the cell] I
              told them that - - why haven't I seen the doctor.  They told me why
21            - - let me rephrase that.
                 I asked them how come I'm not allowed to see the nurse.  They
22            told me the nurse is busy and the nurse will see you later.
              I explained to them this is an emergency, you know.  I mean, I

23

24        ⸻⸻⸻⸻⸻⸻
             [2]  Plaintiff disputes defendants' assertions that plaintiff contributed to his ankle problem
25   by failing to use crutches, exercising, and failing to inform defendant Mabeus about when his
     ankle was injured.  (Opp'n at 3.)  The court finds that these disputed facts are immaterial for
26   determining whether defendant Mabeus was deliberately indifference to plaintiff's medical
     needs.

1   signed up for sick call to see the nurse and you're telling me I can't
2   see the nurse. I was told again the nurse is busy. We will call you
    back. Don't push the button unless it's an emergency. Then I
3   explained to them this is an emergency.

4   Q. And what was the emergency, was it the swelling on your left
    ankle?

5   A. It was in pain. My whole foot and ankle was in pain.

6   (Dep. at 70-71.)

7   As set forth above, an allegation of mere delay in providing medical treatment

8   without more is insufficient to state a cognizable claim of deliberate indifference to a medical

9   need; the delay must have resulted in some harm. In opposing the motion for summary

10   judgment, plaintiff offers no evidence or arguments which would show that he suffered further

11   harm to his ankle as a result of this alleged delay in obtaining treatment. In fact, at his deposition

12   plaintiff testified that the ankle injury was not exacerbated by these events.

13   Q [defendants' attorney]. Has any doctor told you that the deputies
    [sic] refusal to have you seen immediately by medical staff
14   exacerbated your ankle injury?

15   A [plaintiff]. Exac - - - what?

16   Q. Exacerbate, made worse.

17   A. No.

18   (Dep. at 99-100.)

19   Three days after plaintiff sought medical attention on January 3, 2003, defendant

20   Mabeus examined plaintiff's. In his affidavit, defendant Mabeus stated:

21   Plaintiff's medical records reflect that the first time he was seen by
    medical staff in January 2003 was on January 6, 2003, when he
22   was seen during physician sick call by myself. On said date
    Plaintiff complained that his left ankle as still swollen. During my
23   observation of the ankle joint, I noted that there was still some
    swelling on the left ankle, but much less than his visit on
24   December 17, 2002. These observations confirmed my previous
    left ankle sprain diagnosis and therefore I did not alter the
25   treatment plan I previously provided to Plaintiff. Namely that
    meant that Plaintiff was to continue to take 800 mg of Motrin for
26   both pain relief and to act as an anti-inflammatory to reduce

13

1    swelling, continue use of his crutches, and keep weight off the
2    ankle joint. . . .

3    (MSJ, Mabeus Decl. ¶ 7 at 2.)  Since there is no evidence that plaintiff suffered harm due to the

4    3-day delay in having his ankle examined, plaintiff has failed to demonstrate that defendants

5    Green and Kacalek were deliberately indifferent to his medical care.  See McGuckin v. Smith,

6    974 F.2d at 1060.  It is perhaps understandable that plaintiff was upset and in discomfort after

7    waiting over an hour to see the nurse during sick-call.  However, there is nothing in the record

8    indicating that defendants interfered with this medical appointment or with plaintiff's later

9    requests to see a doctor or nurse on the day in question.  Moreover, the court is not persuaded

10   that defendants' admonishments that plaintiff would receive a disciplinary if he continued to

11   press the emergency call button is evidence of deliberate indifference to a serious medical need.

12   After plaintiff was returned to his cell, he continued to press the call button even after he was

13   told that medical personnel was unavailable at that time and even though there was no apparent

14   change in his medical condition.  There is no evidence that the lack of immediate medical

15   attention to plaintiff's ankle demonstrates constitutionally inadequate medical care.  Indeed,

16   when plaintiff was examined three days later, no modifications were made to his treatment plan.

17          Since there is no evidence even suggesting that defendants Green and Kacalek

18   were deliberately indifferent to plaintiff's medical care, summary judgment should also be

19   granted in favor of these defendants.

20          Accordingly, IT IS HEREBY RECOMMENDED that:

21          1.  Defendants' motion for summary judgment, filed on April 21, 2006, be

22   granted; and

23          2.  This action be dismissed.

24          These findings and recommendations are submitted to the United States District

25   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

26   days after being served with these findings and recommendations, any party may file written

14

1   objections with the court and serve a copy on all parties.  Such a document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3   shall be served and filed within ten days after service of the objections.  The parties are advised

4   that failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: January 16, 2007.

7

8   _____
    DALE A. DROZD

9   UNITED STATES MAGISTRATE JUDGE

10  DAD:4
    jone0119.57

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26